Hon. JAMES BARRETT,
Hon. WILLIAM C. WILSON, } Assistant Judges.
Hon. BENJAMIN H. STEELE,

---

SAMUEL D. HOLLISTER, Administrator of Henry H. Barrows,
*v.* Daniel Young.

### *Evidence.    Witness.*

The death of one party to the cause of action in issue, is the ground of excluding the survivor from testifying, and not the fact that the estate of the deceased party has an interest in the result of the suit. Gen. Sts., ch. 36, § 24.

The legal representatives of the intestate quitclaimed the premises in question, prior to the appointment of an administrator, and while the defendant was in adverse possession claiming title. The grantee brought ejectment in the name of the administrator. The question was whether the defendant had recognized the intestate's title during his life, and had occupied under and in subjection to it. *Held*, that the defendant was not a competent witness.

EJECTMENT for lot No. 3 of range 8 in Marshfield. Plea, the general issue. Trial by jury, March term, 1868, PECK, J., pre-

siding. Verdict for the defendant. The writ was dated February 23, 1867, and served February 28, 1867.

The plaintiff introduced a letter of administration on the estate of Henry H. Barrows, of the city of New York, dated February 22, 1867.

The plaintiff introduced a deed of the premises from John Barrows to Henry H. Barrows, dated December 5, 1832, and a prior deed from Silas Papoon to John Barrows ; but there was no evidence in the case, that Papoon or John Barrows ever had any title to or possession of the premises, nor was there any evidence that Henry H. Barrows or his legal representatives ever had any possession of the premises, except as hereinafter stated.

It appeared that between thirty and forty years ago this lot, which was a rough, poor, back lot, was entirely wild and uncul-- tivated, and in its natural condition, as well as the land around it ; that the defendant then cut a road through the forest to the. lot, and began to clear upon it, and about that time built a house, and soon after built a barn, and continued to reside there and occupy the lot, with his wife and children, to the present time, and was in possession at the commencement of this suit, and ever has been since he first commenced to clear it; and in the mean time has cleared and cultivated some fifty acres or more of the lot. It appeared that, when the defendant built his house and barn, he supposed they were built upon this lot, but some years afterward there was a dispute as to the location of the line, and the line claimed by the adjoining proprietor, would include the defendant's buildings within the lines of the lot of said adjoining proprietor ; but, by the line as claimed by the defendant, the buildings were upon this lot in question. The dispute was settled by the defendant's buying some ten acres of the adjoining lot, to secure the place where the buildings were.

It appeared by the evidence on the part of the plaintiff, that, sometime after the death of Henry H. Barrows and before the commencement of this suit and before the plaintiff procured his letter of administration, he made a bargain with the legal representatives of Henry H. Barrows in New York, by which he procured a quitclaim deed from them of this lot. The deed was.

from the widow of said Henry H. Barrows, and his son, who was his only child and only heir, and who was also executor of said Henry H. Barrows, in New York. The plaintiff, Samuel D. Hollister, was a witness in his own behalf, and testified, among other things, that he took out the letter of administration solely for his own benefit and on his own account, and that this suit is prosecuted for his own benefit, and that the estate of Henry H. Barrows has no interest in it.

It appeared that, at the time the plaintiff, Hollister, took his quitclaim deed, the defendant was in adverse possession of the premises. After this evidence was put in on the part of the plaintiff, showing that said Hollister, in his individual capacity, was the sole person in interest in the suit, the defendant was offered as a witness for the defense, to which the plaintiff objected, on the ground that Henry H. Barrows was deceased and the suit was in the name of his administrator, and claimed that the defendant was for that reason rendered incompetent by statute. The court held that as the estate and legal representatives of Henry H. Barrows were not interested in the suit, and in no way, directly or indirectly, to be affected by the result of it, the defendant was a competent witness, and admitted him to testify; and his testimony was material in the defense. To the admission of the defendant as a witness, the plaintiff excepted.

The testimony on the part of the defense tended to show that the defendant, during the whole period of his possession of the premises, occupied adversely under a claim of right and in his own behalf.

The evidence on the part of the plaintiff tended to show that, after the defendant had been in possession a few years, and less than fifteen years, he recognized the title of Henry H. Barrows, and occupied under and in subjection to it, so that he became virtually tenant of Henry H. Barrows, and that from that time the defendant's possession inured to the benefit of said Henry H. Barrows.

The case was submitted to the jury under a charge to which no exception was taken by the plaintiff.

*Joseph A. Wing,* for the plaintiff.

*J. P. Lamson* and *Heaton & Reed,* for the defendant.

The opinion of the court was delivered by

PIERPOINT, C. J.  The only question for our consideration in this case, is whether the defendant was properly admitted as a witness in his own favor, the plaintiff's intestate, Henry H. Barrows, being dead. . In section 24 of chapter 36 of the General Statutes it is provided, " that in all actions, except actions on book account, where one of the original parties to the contract or cause of action in issue and on trial, is dead, or is shown to the court to be insane, the other party shall not be admitted to testify in his own favor."

The action is ejectment.  The cause of action alleged is the eviction of the plaintiff's intestate, by the defendant, from the premises in question.  Neither party on trial showed a paper title to the premises.  The plaintiff put in evidence deeds to said Barrows, showing color of title, together with testimony tending to show that the defendant, in the lifetime of Barrows, had recognized said Barrows's title, and occupied under and in subjection to it, so that the defendant's possession inured to the benefit of said Barrows.  This the defendant denied, claiming that his entire possession was adverse and under a claim of title in himself, and this seems to have been the only point litigated upon the trial.

Said Barrows and the defendant were the only parties to the cause of action in issue and on trial, and were the parties to the agreement claimed by the plaintiff, if any was made.  Barrows being dead, the case comes clearly within the letter of the statute that excludes the survivor from being a witness.

The county court held that, as the estate and legal representatives of Barrows were not interested in the suit, and in no way to be affected by the result of it, the defendant was a competent witness, and admitted him to testify.

The case shows that, after the death of said Barrows and before the plaintiff, Hollister, took administration on his estate, the widow and son (the son being the only heir of the deceased)

quitclaimed the premises in question to said Hollister. The defend-- ant being in possession, claiming title at the time of this convey-- ance, the deed, under our statute, was inoperative as to him; so, that any action brought against the defendant to settle the title, must be brought in the name of the administrator of said Barrows's estate; and this action is so brought, and a judgment in favor of the plaintiff would inure to the benefit of Hollister alone.

The court below seem to have proceeded upon the ground that the beneficial operation of this statute is to be limited to cases where the estate or the legal representatives of the deceased: party are in interest. The statute does not in terms so limit it.. Its language is broad enough to embrace a case like the present. If the legislature had intended so to limit it, the addition of a few words would have accomplished that end. Is there anything in the case or in the general operation of the statute, that requires the court, in view of the ends of justice or of sound public policy, to limit it by construction?

The suit is brought in the name of the administrator to estab-- lish the title of the deceased party for the benefit of the grantee of the heirs to the estate.

Is there any reason why the benefit of this statute should be given to the heirs of the estate, and denied to their grantee, the action being in the same form? The object of the statute was to guard against the danger of false testimony by the survivor. The danger is just as great in one case as in the other. The grantee or assignee of the deceased party or his representatives is not supposed to know any more of the nature of the transaction between the original parties than do the heirs or administrator of the deceased party. Ordinarily, he knows less. The rights of the assignee are just as sacred in the eye of the law, as the rights of the heirs. The protection of the statute is just as necessary in one case as in the other, and no evil can result from its application in one case, that will not follow its application in the other. Suppose the administrator of an estate, in course of its settlement, sells a note belonging to the estate, that is not negotiable, or suppose such a note to have been sold in the lifetime of the deceased, and the purchaser brings an action in the name of

the administrator, as he must to enforce payment. . Can the maker come in, and defeat the action by his own testimony of what transpired between him and the payee of the note in his lifetime? We think not.

The statute makes the death of one party to the cause of action in issue the ground of excluding the survivor, and not the fact that the estate of the deceased party has an interest in the result of the suit.

Judgment reversed, and case remanded. ....